IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>BELMONT VILLAGE, L.P. and<br>BELMONT VILLAGE AT BUCKHEAD<br>SENIOR HOUSING, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE<br>NO.:<br><br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

COMES NOW Plaintiff, Equal Employment Opportunity Commission

("Plaintiff"), and files this Complaint. This is an action under Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, and Title I of the Civil Rights Act of

1991 to correct unlawful employment practices on the basis of sex, pregnancy, and

to provide appropriate relief to Joann Johnson ("Johnson") and Marcia Thomas

("Thomas"), who were adversely affected by such practices. Plaintiff alleges that

Defendants Belmont Village, L.P. and Belmont Village at Buckhead Senior

Housing, LLC (hereinafter "Defendants") are a joint enterprise that subjected

Johnson and Thomas to unlawful discrimination by terminating their employment because of their pregnant status in violation of Title VII.

## JURISDICTION AND VENUE

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) (Title VII), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.

The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3.

Plaintiff is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly

authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.

At all relevant times, Defendants have continuously been doing business in the State of Georgia, and have continuously had at least 15 employees, either individually or as a joint enterprise.

5.

Belmont Village, L.P. is a Delaware limited partnership that can be served with process through its registered agent, C.T. Corporation System, 1201 Peachtree Street, N.E., Atlanta, GA 30361. Jurisdiction and venue are proper in this Court as to Belmont Village, L.P.

6.

Belmont Village at Buckhead Senior Housing, LLC is a Delaware limited liability company that can be served with process through its registered agent, C.T. Corporation System, 1201 Peachtree Street, N.E., Atlanta, GA 30361. Jurisdiction and venue are proper in this Court as to Belmont Village at Buckhead Senior Housing, LLC.

7.

At all relevant times, Defendants have continuously been employers
engaged in an industry affecting commerce under Section 701(b), (g) and (h) of
Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

8.

Defendants are so integrated that they constitute a "single" or "integrated"
employer for purposes of Title VII.

9.

Upon information and belief, at all times relevant to the claims in this
Complaint, Defendants had common management, interrelation of operations,
centralized control of labor relations, and common ownership and financial
control.

10.

Upon information and belief, there was an interrelation between the
operations of Defendants.  For example, upon information and belief, Belmont
Village, L.P. has day-to-day control over the operations of Belmont Village at
Buckhead Senior Housing, LLC.

11.

There was centralized control of labor relations and common management between Defendants because, *inter alia*, upon information and belief, final decisions regarding hiring and firing employees for Belmont Village at Buckhead Senior Housing, LLC were made and/or approved by Belmont Village, L.P. at its office in Houston, Texas.

12.

Defendants had common ownership and financial control because, upon information and belief, Defendants have common owners, officers, and/or directors.

## STATEMENT OF CLAIMS

13.

More than 30 days prior to the institution of this lawsuit, Johnson filed a charge with the Commission alleging violations of Title VII by Defendants.  All conditions precedent to the institution of this lawsuit have been fulfilled.

14.

Since at least January 29, 2009, Defendants have engaged in unlawful employment practices at their Atlanta, Georgia facility in violation of Section

703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by, *inter alia*, terminating Johnson's and Thomas' employment due to their pregnancies.

15.

Defendants own and operate assisted-living facilities for seniors, including the Atlanta, Georgia facility at which Johnson and Thomas were employed.

**Joann Johnson**

16.

Defendants provide their residents with meal service through an on-site kitchen and restaurant. Johnson was employed by Defendants as the sous chef in its on-site kitchen.

17.

On or about January 29, 2009, Johnson told her supervisor, Patricia Mann, the Chef Manager, that she was pregnant.

18.

After Johnson informed Mann of her pregnancy, she was immediately subjected to unlawful discrimination.

19.

For example, on or about February 5, 2009, Mann approached Johnson in the walk-in freezer at the facility and said, "Ever since you found out you were pregnant, you don't seem to care about your job." Mann then said that when she returned to the facility in one week, she wanted Johnson to tell her if she still wanted her job. Johnson asked her what she was talking about, but Mann just said, "Let me know."

20.

Immediately following this confrontation, Mann and her supervisor, Debra Ben-Dor, the Executive Director of the facility, began documenting alleged performance issues of Johnson. She was subjected to a series of at least six formal and informal verbal and written write ups and warnings for conduct which allegedly occurred on February 2, 2009, February 9, 2009, February 19, 2009, February 23, 2009, March 15, 2009, and March 16, 2009.

21.

Johnson denies that all of these instances occurred and some of the write ups were never shared with Johnson; rather, they were just notes from Mann and Ben-Dor to her personnel file that Johnson never saw.

22.

The documentation of these alleged performance issues resulted in Johnson

being put on a 30-day performance improvement plan on February 23, 2009.

23.

At the end of the 30-day performance improvement plan, Mann and Ben-

Dor contend that Johnson did not meet their expectations and terminated her

employment effective March 27, 2009.

24.

Similarly-situated, non-pregnant employees had more severe and more

frequent disciplinary issues, but did not have their employment terminated.

**Marcia Thomas**

25.

Defendants provide their residents with personal care service through

Personal Assistant Liaisons ("PAL").  PALs assist residents directly with their

needs, including providing daily care to residents, wellness checks, housekeeping,

and responding to residents' requests for assistance.  Thomas was employed by

Defendants as a PAL.

26.

In September 2008, Thomas advised Defendants that she was pregnant and that she believed her due date was in March 2009.

27.

Thomas was advised that eligibility for maternity leave required one year of employment and that she would not be eligible for maternity leave in March 2009. As a result, Thomas was told by Defendants that she would have to quit her job when she had her baby and then reapply for her position after having the baby.

28.

On or about September 25, 2008, Defendants contend that Thomas was caught sleeping on duty by Ben-Dor and a resident's daughter. Ben-Dor called Thomas the next day and terminated Thomas's employment over the phone. Thomas denies actually sleeping on the job. Several days after having her employment terminated, Thomas asked for her job back, but her request was denied.

29.

Defendants claim that sleeping on the job subjects the employee to immediate termination. Similarly-situated, non-pregnant employees, however,

have been caught sleeping on the job, but they did not have their employment

terminated for that offense.

30.

In fact, a male employee, who was subject to the same workplace rules as

Thomas, was caught sleeping in a bed in one of the resident rooms with the door

locked after he had clocked in for work.  When confronted, he lied about not

having clocked in.  Despite these two workplace rule violations, the male

employee did not have his employment terminated; rather, he received only an

"initial counseling".

31.

The effect of the practices complained of above is to deprive Johnson and

Thomas of equal employment opportunities and otherwise adversely affect their

status as employees because of their sex and/or pregnancy.

32.

The unlawful employment practices complained of above were intentional.

33.

The unlawful employment practices complained of above were carried out

by Defendants with malice and/or reckless indifference to Johnson's and Thomas'

federally-protected rights.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendants, their officers, members, successors, assigns and all other persons in active concert or participation with it, from refusing to hire and/or terminating employees on the basis of sex and/or pregnancy, and any other employment practice that discriminates on the basis of sex and/or pregnancy.

B.      Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for pregnant employees, and which eradicate the effects of their past and present unlawful employment practices.

C.      Order Defendants to make Johnson and Thomas, who were adversely affected by Defendants' discriminatory conduct, whole by providing appropriate back pay with prejudgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices.

D.     Order Defendants to make Johnson and Thomas whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses and medical expenses not covered by Defendants' employee benefit plan, in amounts to be determined at trial.

E.     Order Defendants to make Johnson and Thomas whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in an amount to be determined at trial.

F.     Award punitive damages against Defendants for their malicious and/or reckless conduct described above in an amount to be determined at trial.

G.     Grant such other and further relief as the Court deems just, necessary, and proper in the public interest.

H.     Award Plaintiff its costs in this action.

[Jury Demand and signature page follows]

12

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its

Complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

James L. Lee
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

8/25/11
Date

Robert K. Dawkins
Regional Attorney
Georgia Bar No. 076206

Ottrell Ferrell Edwards
Supervisory Trial Attorney
Georgia Bar No. 141979

Steven A. Wagner
Trial Attorney
Georgia Bar No: 000529

U.S. Equal Employment Opportunity
Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30

13

Atlanta, Georgia 30303
Telephone:   (404) 562-6818
Facsimile:   (404) 562-6905
robert.dawkins@eeoc.gov
steven.wagner@eeoc.gov